IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

TALARISHA SAIN,  )
　　　　　　　　　　　　　)
　　　　　Plaintiff,  )
　　　　　　　　　　　　　)
v.  )　　No. 13-1262-T
　　　　　　　　　　　　　)
COMMISSIONER OF  )
SOCIAL SECURITY,  )
　　　　　　　　　　　　　)
　　　　　Defendant.  )

---

ORDER AFFIRMING DECISION OF COMMISSIONER

---

Plaintiff filed this action to obtain judicial review of Defendant Commissioner's final decision denying her applications for disability insurance benefits and supplemental security income ("SSI") under the Social Security Act ("the Act"). Plaintiff's applications were denied initially and upon reconsideration by the Social Security Administration. Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on February 28, 2012.

On May 9, 2012, the ALJ issued a decision, finding that Plaintiff was not entitled to benefits. The Appeals Council affirmed the ALJ's decision. This decision became the Commissioner's final decision. Plaintiff filed this action, requesting reversal of the decision of the Commissioner. For the reasons set forth below, the decision of the Commissioner is AFFIRMED.

Pursuant to 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he was a party. "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Id. The court's review is limited to determining whether or not there is substantial evidence to support the Commissioner's decision, 42 U.S.C. § 405(g), and whether the correct legal standards were applied. See Lindsley v. Commissioner, 560 F.3d 601, 604–08 (6th Cir. 2009); Kyle v. Commissioner, 609 F.3d 847, 854 (6th Cir. 2010).

The Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations and resolve material conflicts in the testimony, and to decide the case accordingly. See Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007). When substantial evidence supports the Commissioner's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion. See Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001); Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986).

Plaintiff was born July 28, 1977, and was thirty two years old at the time of the filing of her applications for benefits. R. 59-60. She was thirty four years old when the ALJ issued the unfavorable decision. R. 7-31. She has a high school education. R. 183, 249. Plaintiff previously worked as an assembly worker and companion. R. 212, 222, 237. Plaintiff alleges that she is disabled due to back and leg pain, carpal tunnel syndrome, arthritis, a lump in her breast, migraines, depression, joint pain, and sciatica. R. 248.

The ALJ enumerated the following findings: (1) Plaintiff met the insured status requirements of the Act on December 31, 2014; (2) Plaintiff engaged in substantial gainful activity from January 2005 through December 2006; accordingly, the ALJ considered the medical evidence beginning on January 1, 2007; (3) Plaintiff has the following severe impairments: disorder of the back and affective mood disorder; but she does not have impairments, either alone or in combination, that meet or equal the requirements of any listed impairment contained in 20 C.F.R. pt. 404, subpt. P, app. 1 of the listing of impairments; (4) Plaintiff retains the residual functional capacity to perform sedentary work; she can understand, remember, and carry out simple instructions, make simple work-related decisions, respond appropriately to supervision, coworkers, and usual work situations, and deal with changes in a routine work setting; (5) Plaintiff is unable to perform her past relevant work; (6) Plaintiff was a younger individual with a high school education on the alleged onset date; (7) transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules ("the grids") as a framework supports a finding that Plaintiff is not disabled whether or not she has transferable job skills; (8) considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform; (9) Plaintiff was not under a disability as defined in the Act at any time through the date of this decision.

The Social Security Act defines disability as the inability to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1). The claimant bears the ultimate burden of

establishing an entitlement to benefits. Born v. Secretary, 923 F.2d 1168, 1173 (6th Cir. 1990). The initial burden of going forward is on the claimant to show that he is disabled from engaging in his former employment; the burden of going forward then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. Id.

The Commissioner conducts the following, five-step analysis to determine if an individual is disabled within the meaning of the Act:

> 1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> 2. An individual who does not have a severe impairment will not be found to be disabled.
>
> 3. A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.
>
> 4. An individual who can perform work that he has done in the past will not be found to be disabled.
>
> 5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

20 C.F.R. § 404.1520(a)(4); Howard v. Commissioner, 276 F.3d 235, 238 (6th Cir. 2002). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. 20 C.F.R. § 404.1520(a). Here, the sequential analysis proceeded to the fifth step with a finding that, although Plaintiff cannot perform her past

relevant work, there is a substantial number of jobs that exist in the national economy that he can perform.

Plaintiff argues that substantial evidence does not support the ALJ's findings. Plaintiff specifically argues that the opinions of her treating and examining physicians, which indicate greater limitations than found by the ALJ, should have been given more weight. She contends that the evidence does not support a finding that she can perform the full range of sedentary work. Plaintiff's arguments are not persuasive.

An ALJ is required to accord controlling weight to a treating physician's medical opinion **if** it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); White v. Commissioner, 572 F.3d 272, 286 (6th Cir. 2009). "Treating physicians' opinions are only given such deference when supported by objective medical evidence," and the "determination of disability is ultimately the prerogative of the Commissioner, not the treating physician." Warner v. Commissioner, 375 F.3d 387, 390 (6th Cir. 2004) (brackets omitted). If the opinion is not controlling, the ALJ must evaluate the medical opinions based on the physician's relationship with the claimant, the evidence the physician presents to support his opinion, the consistency of the physician's opinion with the record as a whole, the physician's specialty, and other factors. See 20 C.F.R. §§ 404.1527(c), 416.927(c). The ALJ is not required to explain how he considered each of these factors but must give good reasons for rejecting or discounting a treating physician's opinion. See Francis v. Commissioner, 414 F. App'x 802, 804 (6th Cir. 2011).

In the present case, the ALJ gave some weight to the opinions of Dr. Marvin Cohn and Dr. Rosylnn Webb, non-examining physicians, who opined that Plaintiff could perform medium work by lifting up to fifty pounds and standing for six hours and sitting for at least six hours in an eight-hour day. R. 1060-68, 1107-15. However, the ALJ gave greater weight to the opinions of primary care physician Dr. George Mangle and examining physician Dr. John Woods who assigned greater limitations in these areas. R. 21, 38. Both Dr. Mangle and Dr. Woods opined that Plaintiff could stand for at least two hours in an eight-hour day, which is consistent with sedentary work. R. 1043, 1241.

As for the sitting restriction, Dr. Woods opined that Plaintiff could sit with no restrictions, R. 1043, while Dr. Mangle opined that Plaintiff could sit for less than four hours in an eight-hour day due to back pain. R. 1241. According to Dr. Mangle, an anterior osteophyte at L1-L2 in Plaintiff's back limited her ability to sit. R. 1241. However, an MRI in August 2011 revealed only a minimal anterior osteophyte at L1-L2. R. 1148. Although the MRI revealed a small anterior osteophyte, there was no evidence of disc herniation, nerve root impingement, or spinal stenosis. R. 1148, 1248. In fact, the osteophyte in Plaintiff's lower back was so minimal that many imaging studies failed to detect the slight abnormality. Imaging studies in February 2007, R. 461, September 2007, November 2007, R. 659, May 2010, R. 815, and January 2011, R. 1095, revealed that Plaintiff's spine was within normal limits. John Neblett, a neurosurgeon, described Plaintiff's January 2011 MRI as being normal. R. 296, 1074. Additionally, the record does not document any ongoing objective

clinical findings such as positive straight leg raises or an antalgic gait that would support lumbar pathology.

Records prior to Dr. Mangle's treatment of Plaintiff do not support Dr. Mangle's opinion. For example, hospital records in 2005 showed that Plaintiff's back pain was controlled with medications. R. 550. Although Plaintiff consulted a specialist in January 2006 and again in September 2007, the exam and accompanying imaging studies did not reveal any serious problem. R. 517-18. Generally, opinions from specialists deserve greater weight than opinions from non-specialists such as Dr. Mangle. See 20 C.F.R. §§ 404.1527(c)(5), 416.1527(c)(5).

Dr. Mangle's treatment notes did not document any significant worsening of Plaintiff's back problems beginning in 2008. Instead, Dr. Mangle consistently reported that Plaintiff's low back pain was stable on medication and advised no further intervention. R. 1177, 1180, 1186, 1186, 1192, 1194. Plaintiff reported back pain only intermittently, and treatment notes show that Plaintiff's back was generally within normal limits. R. 1177, 1189, 1192, 1194. Dr. Neblett also found negative straight leg raises and full strength. R. 1091. Dr. Woods' examination similarly revealed negative straight leg raises, R. 1042, and only minimal decrease in the range of motion of Plaintiff's back. R. 1040. Inspections of Plaintiff's back during hospital admissions were also generally benign. R. 338, 459, 644, 665.

Accordingly, Dr. Mangle's opinion was not well-supported as to sitting restrictions, and the ALJ could properly give it little weight. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

7

In making his sitting determination, the ALJ relied on the opinions of examining physician Dr. Woods and non-examining physicians Dr. Cohn and Dr. Webb who opined that Plaintiff could perform the sitting requirements of sedentary work. R. 1043, 1061, 1108. See 20 C.F.R. §§ 404.1527(c)(2), (c)(4), 416.927(c)(2), (c)(4). Their opinions were more consistent with the objective medical evidence documenting generally benign findings and the opinions of Plaintiff's treating specialists who found no significant problems with her back. R. 1067, 1114.

Concerning lifting restrictions, Dr. Mangle and Dr. Woods opined that Plaintiff could not lift ten pounds frequently due to her carpal tunnel syndrome, R. 1043, 1241, but Dr. Mangle's treatment notes and Dr. Woods' report did not support such limitations. Plaintiff reported that her left hand was not affected by carpal tunnel syndrome. R. 37. Dr. Mangle did not observe problems with Plaintiff's right hand until March 2010. R. 1172-73, 1175. However, Plaintiff had resumed factory work in March 2010 involving repetitive hand and wrist motions that exacerbated her condition. R. 1039, 1174. The period of carpal tunnel syndrome exacerbation lasted only a few months, and therefore, failed to meet the twelve month duration requirement for proving disability. See 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

The ALJ found that Plaintiff's June 2010 carpal tunnel release surgery resolved her symptoms. R. 1013-14. Dr. Mangle's treatment notes following the surgery revealed full (5/5) muscle strength, normal sensation, and full range of motion. R. 21, 1180, 1183, 1186. Moreover, the record did not document any ongoing objective clinical examination findings

such as muscle atrophy or positive Phalen's or Tinel's signs that would be consistent with ongoing carpal tunnel syndrome. In fact, Plaintiff denied hand tingling or numbness in May 2011. R. 17, 1185. Although Dr. Woods found less than full strength in Plaintiff's hand, R. 1040, his findings did not reflect Plaintiff's functioning due to the recent surgery. Dr. Woods reported that Plaintiff refused to lift any weight with her right hand due to her recent surgery, R. 1040, and he was unable to assess her range of motion or Tinel's and Phalen's signs due to wrist splints. R. 1041-42.

Plaintiff worked forty hours a week as a "Res Trainer" from March 2004 through December 2006, which required her to handle, grab, and grasp big objects and to write, type, or handle small objects and to lift up to one hundred pounds and lift up to fifty pounds frequently. R. 222, 237-38. She also worked full time as an assembler in a factory from March 2007 until June 2007, R. 222, 237, 249, and from September 2008 until January 2009. R. 261. Plaintiff's work undercuts her claims of disabling limitations. See Blacha v. Secretary, 927 F.2d 228, 231 (6th Cir. 1990).

Although Dr. Pickering diagnosed mild mental retardation based on low IQ scores during his one-time examination, the record included no academic or medical records that showed deficits in adaptive functioning required to support a diagnosis of mental retardation. Dr. Pickering believed that Plaintiff had received special education services while in school, R. 1316, but she reported that she had completed twelfth grade and was a B and C average student. R. 1032. Moreover, Plaintiff lived in an apartment by herself, drove, prepared meals, and performed household chores. R. 22, 1032. She also had a work history that was

9

inconsistent with Dr. Pickering's diagnosis. R. 15, 222, 237, 249. See Justice v. Commissioner, 515 F. App'x 583, 587 (6th Cir. 2013) (the claimant's lengthy work history showed a lack of deficits in adaptive functioning and undermined a physician's mental retardation diagnosis). Accordingly, substantial evidence supports the ALJ's decision to reject Dr. Pickering's opinion concerning mental limitations.

Examining psychologist Dr. Robert Kennon opined that Plaintiff could understand, remember, and carry out short, simple instructions. R. 1034. The ALJ relied on Dr. Kennon's report, Plaintiff's extensive work history, and the complete absence of other evidence of intellectual deficits when assessing Plaintiff's mental residual functional capacity.

The ALJ rejected the opinion of Stephen Spring, a therapist and licensed clinical social worker because Mr. Spring was not an acceptable medical source, failed to cite specific clinical findings in support of his opinion, and rendered an opinion that was not supported by the record. Acceptable medical sources include physicians, psychologists, optometrists, podiatrists, and speech-language pathologists but do not include licensed clinical social workers or therapists. See 20 C.F.R. §§ 404.1513(a), (d)(1), 416.913(a), (d)(1). SSR 06-03p provides that "the fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than the opinion from a medical source who is not an 'acceptable medical source." Accordingly, the ALJ did not err in relying on the opinions of acceptable medical sources over the unsupported opinion of Mr. Spring.

At step five of the sequential evaluation process, the ALJ had to determine if Plaintiff could do other work in the national economy. The United States Supreme Court has upheld the Commissioner's reliance on the grids when a claimant's vocational factors and residual functional capacity coincide with the criteria of a particular grid rule. See Heckler v. Campbell, 461 U.S. 458 (1983). The Sixth Circuit has also recognized that the Commissioner may rely on the grids unless a claimant has non-exertional limitations that significantly limit the range of work at a designated level. See Atterberry v. Secretary, 871 F.2d 567, 572 (6th Cir. 1989). When the grids cannot be used to direct a finding of disabled or not disabled because of the claimant's nonexertional limitations, they may be used as a framework for the decision making process. See 20 C.F.R. §§ 416.969, 416.969a(d); 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)(2).

In the present case, the ALJ recognized that Plaintiff had limitations that precluded the strict application of the grids and that he could use the grids only as a framework for his decision. Grid Rule 201.28 directs a finding of not disabled for claimants who can perform sedentary work, are age eighteen to forty-four, have at least a high school education, and have skilled or semi-skilled work experience. See 20 C.F.R. pt. 404, subpt. P, app. 2 § 201.28. Plaintiff meets all these characteristics but has a nonexertional limitation. The ALJ found that Plaintiff's nonexertional limitation had little or no effect on the occupational base. Thus, a significant number of sedentary jobs existed that Plaintiff could perform. See 20 C.F.R. § 404.1520(g).

Because there is substantial evidence in the record supporting the Commissioner's decision denying Plaintiff's application for benefits, the decision of the Commissioner is AFFIRMED. The clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.

 s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE